## NATIONAL LUMBER CO. v. CITY OF WYMORE.

[FILED SEPTEMBER 18, 1890.]

1. **The instructions** must be predicated upon the testimony in the cause, and if not based thereon, although correct abstract propositions of law, the error may be sufficient to cause a reversal of the case.

2. **Cities:** CLAIMS AGAINST: CONDITIONAL ALLOWANCE. The allowance of a claim by the.city council with the condition annexed to it "to be paid when there is money in the treasury to pay with" is binding on the city, and the condition will not defeat an action to recover a judgment thereon.

ERROR to the district court for Gage county. Tried below before APPELGET, J.

*A. Hardy,* for plaintiff in error, cited: *Bellows v. West Fork,* 30 N. W. Rep. [Ia.], 582; *Skinner v. Dayton,* 19 Johns. [N. Y.], 573\*; *Gaines v. Miller,* 111 U. S., 395; *Com. Bank of Buffalo v. Warren,* 15 N. Y., 577; *Herrmans v. Clarkson,* 64 Id., 171; 1 Dillon, Mun. Corp., sec. 463; *Hoyt v. Thompson,* 19 N. Y., 207; *Olcott v. Tioga R. Co.,* 27 N. Y., 546; *Medomak Bank v. Curtis,* 24 Me., 38; *Whitnel v. Warner,* 20 Vt., 425; *Essex Turnpike v. Collins,* 8 Mass., 292; *Lyndeborough Glass Co. v. Mass. Glass Co.,* 111 .Id., 315; *Sandwich Mfg. Co. v. Shiley,* 15 Neb., 109.

*T. D. Cobbey, contra,* cited: *Fulton v. Lincoln,* 9 Neb., 363; *Wheeler v. Plattsmouth,* 7 Id., 279; *Merriam v. Otoe Co.,* 15 Id., 413; *Omaha Nat'l Bank v. Omaha,* Id., 334.

MAXWELL, J.

This action was brought by the plaintiff against the defendant to recover for building material used in the erec-

tion of a calaboose in that city. The defendant filed an answer as follows:

"The defendant, in answer to the petition of the plaintiff, admits that the plaintiff is a corporation doing business in said county, and that the defendant is a municipal corporation in the said county, but denies each and every other material allegation in the plaintiff's petition set forth; that this action is brought to recover for a certain bill of lumber furnished by the plaintiff to one Peter S. Darling, a builder and contractor, with whom the defendant, the then village of Wymore, by its chairman and board of trustees, through a committee, consisting of two members of said board of trustees, had made a verbal contract for the erection of a calaboose; that the said contract was for the building complete and the turning over to the then village of Wymore, in a finished condition, the said calaboose building at a stipulated contract price—the said contractor Darling to purchase material and hire labor in his own discretion and on his own responsibility; that pursuant to said contract, the said builder, Darling, proceeded to erect the said calaboose, hired his own help, purchased lumber and hardware in his own discretion without any interference or control on the part of the defendant; that said building was never completed, nor turned over to the defendant, nor accepted by the defendant, but was burned before completion and before acceptance by the defendant, and defendant has never had any use or benefit thereof, nor control or dominion over it, nor any connection whatever therewith, and therefore denies any and all responsibility therewith or therefor, and prays for judgment for costs against the plaintiff herein."

The reply is a general denial.

On the trial of the cause one J. R. Boggs testified that in 1883 he was a member of the board of trustees, and that he was a member of the building committee (to erect a calaboose); "that they built one while I was a member of

the board. The contract was let to a man by the name of Darling."

Q. What arrangement, if any, was made about the city paying the National Lumber Company for its material furnished to build the calaboose?

A. The contract was let by taking sealed bids. The contract of Mr. Darling being considerably lower than any of the others, he was given the contract, and when he went to. make arrangements with the National Lumber Company they would not let him have the lumber unless the city would guarantee or stand good for its payment. He reported to the board, and they, at a regular meeting, voted to guarantee that the National Lumber Company should receive their pay; in other words, that the city would stand good for the payment of the money. They also authorized the chairman of the board, Mr. A. J. Dales, and myself to go and inform the National Lumber Company of the action of the board, which we did.

Q. Who made the arrangements, and what position did they hold?

A. The chairman of the board, Mr. A. J. Dales, and myself; I was one of the building committee.

Q. State fully all you know about this, and who was to pay the company for the materials.

A. I have stated as fully as I now remember it. The city of Wymore was to pay the company for the materials.

The court instructs the jury "that the defendant, being a municipal corporation, can do no act or make any contract except by ordinance or resolution passed by the village board or council of such village or city.

"The court further instructs you that, as a matter of law, any committee or sub-committee, appointed by the city board or council of a municipal corporation, can only exercise such powers as are delegated to it by the board or council that creates it.

"The court further instructs you that if you find from

the evidence that the building committee did, prior to the delivery of the lumber by the plaintiff, guarantee the payment of said lumber, and that the plaintiff, relying upon said guarantee, did deliver said lumber to said city or to some other person under direction of said committee, then you will find for the plaintiff and assess its damages at the amount you shall find from the evidence to be the value of the lumber so sold and delivered, with interest at seven per cent, unless you shall further find from the evidence that said committee had not been authorized by the city board to make such guarantee.

"The court further instructs you that if you shall find from the evidence that said building committee did not guarantee the payment of the lumber, as claimed in the plaintiff's petition, before the delivery of the same, or if you shall further find from the evidence that the said building committee has not been authorized by the city board to make such guarantee, then you will find for the defendant."

The testimony shows that the city council allowed one of the bills for the labor in building the calaboose. They also allowed all or nearly all of the bill for hardware used in the building, the entry being as follows: " The calaboose bill was then taken up, and upon motion of trustee Snuffin, seconded by Boggs, it was moved that the sum of $61.27 of said bill, being the work and labor upon said building, be allowed, and a warrant ordered drawn upon the general fund for the same. Upon roll call, trustees Boggs, McGuire, and Snuffin voted in favor of said motion, and the chairman pro tem. declared the same carried. It was also recommended that the balance, viz., $128.73, the material used in said building, be paid when there is money in the treasury to pay with."

It will be seen that the plaintiff's bill for material was recommended to be allowed. It is true the council attached a condition to the recommendation of allowance, viz., " when there is money in the treasury to pay with." The

action of the council, however, will not prevent the plaintiff from recovering a judgment for the debt.   The instructions of the court, therefore, although correct as abstract propositions of law, perhaps, are not predicated upon the testimony and therefore are erroneous.

Certain questions were raised in this court as to the power of the city to contract for. the construction of the calaboose, also to incur an indebtedness for the same, it being alleged that there were no estimates made to incur such indebtedness.   It will be observed, however, that those questions are not raised in the trial court, and, therefore, will not be considered.

The judgment of the district court is reversed and the cause remanded for further proceedings.

JUDGMENT ACCORDINGLY.

THE other judges concur.